## MOYLAN v. DAVIDS.

(City Court of Brooklyn, General Term. December 14, 1892.)

1. MASTER AND SERVANT—ACTION FOR PERSONAL INJURIES—FELLOW SERVANT.
   In an action by an employe against his employer for personal injuries caused by defendant's negligence, it appeared that plaintiff was engaged in filling tubs with coal in the hold of a boat, which were hoisted by an engine in defendant's coal yard; that while being hoisted, one of the tubs suddenly fell, and injured plaintiff; that defendant had directed his engineer to "break in" his stableman so he could run the engine; that the latter was running the engine under the immediate supervision of the engineer at the time of the accident; and that the tub fell because of some wrong movement of a lever on the engine. *Held*, that a motion to dismiss was properly overruled.

**2. SAME—NEGLIGENCE OF EMPLOYER.**
  In such case it cannot be claimed that the injury was caused by a fellow servant, since defendant directed his engineer to "break in" his stableman, thus authorizing the latter to operate the engine.

**3. SAME—INSTRUCTIONS.**
  Where in such case the court instructed the jury that in order to find defendant negligent they must find that the engineer was careless, and that he was "at the time" acting for defendant, and the jury find for plaintiff, it is thereby determined by them that the act of the engineer in attempting to instruct the stableman at the time he did was not the independent act of the engineer, for which defendant would not be liable.

**4. SAME—PROVINCE OF JURY.**
  In such case the question of defendant's negligence was properly submitted to the jury.

Appeal from trial term.

Action by Michael Moylan against Nickels Davids to recover damages for personal injuries caused by defendant's negligence. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before OSBORNE and VAN WYCK, JJ.

Charles C. Nadal, for appellant.

G. G. F. Reynolds, for respondent.

OSBORNE, J. Defendant was the proprietor of a coal yard on Gowanus canal, and boats loaded with coal for defendant were brought up the canal to the dock at his yard to be unloaded. In unloading, the coal was shoveled into large tubs lowered into the hold of the boat. There was a small engine on the dock. The rope used for hoisting the tubs wound around a drum on the engine, and went up through a block on a derrick, and then down to the tub, to which it was attached by a hook. When a tub was filled, a signal was given to the engineer on the dock, who started the engine, and the tub was hoisted to a platform elevated above the dock. The coal was there dumped into cars and carried away, and the tub was then again lowered to be filled. This hoisting and lowering was regulated by levers or handles on the engine. On October 6, 1891, plaintiff was employed by the defendant, together with one Tynan, to unload a canal boat, and they descended into the hold to shovel the coal into tubs, two of which where used, and the practice was to fill one while the other was being hoisted, emptied, and relowered. Plaintiff had filled his tub, and it was in the act of being hoisted to the elevated platform, when it suddenly fell, striking the plaintiff, and injuring him severely, and plaintiff in this action seeks to recover damages for the injuries so received.

It appeared from the testimony of the witness Tynan, called on behalf of the plaintiff, and who saw the tub fall and the incidents connected with its fall, that defendant had in his employ one Gustave Bohnsack, as engineer, whose business it was to manage the engine in such a way as to raise and lower the tubs. Defendant also had in his employ an old man named Coyle, as a stableman. Tynan further testified that, at the time the tub in question fell, Coyle had hold of the handles or levers of the engine, and was trying to hoist, and that Bohn-

sack, the engineer, stood right behind him, "partly in a position so as, by touching him by the arms, to help him to hoist. * * * He was instructing him to do this 'up and up.' They used to let it go up, and when he said 'Up, up,' he raised it up gradually, you know, until it got so high, over our heads like. Then he says to him, 'Let go,' that was to let it go up, and he turned around to let it come down. When he said, 'Let it go,' that is, to go up, the old man turned it the other way,—raised the other one. That let it down; that is how it came right down. At that time the old man [Coyle] had hold of the engine. * * * Question by the Court: How long had this old man been running the engine? Answer. That was the first of my ever seeing him take hold of it,—the time he got hurt." It thus appeared that the plaintiff was seriously injured while in defendant's employ by the falling of the tub, and that the tub fell through the blunder of a stableman while he was being instructed by defendant's engineer in the method of operating the engine, in obedience to defendant's orders. We are of the opinion that the case thus presented was sufficient to call upon the defendant to rebut, if he could, the legitimate inference of negligence which a jury would be justified in drawing from the evidence adduced. Accordingly, the motion to dismiss was properly denied, and the exception to such denial was not well taken.

It appeared from the defendant's testimony that about two months prior to the accident he had told his engineer, Bohnsack, that it would be necessary, and that he wanted him, to break in one or two of the other men, so that they could run the engine when necessary, or when Bohnsack was absent, and the defendant mentioned his brother and Coyle as the men that he wanted to have broken in. Bohnsack testified that, in accordance with the aforesaid directions which defendant had given him, he had called in Coyle just before the accident, for the purpose of instructing him how to operate the engine, and his account of how the tub came to fall was as follows:

"As soon as the boy what was holding guy sung out for to go ahead, we went ahead; and I was standing right behind Coyle, and had my hands on his hands, and I thought that the top [tub?] was clear. I said, 'A little more,' and he must have just raised his right hand up a little, and of course down the tub came. I had my hand on his; stood behind him. I was in the act of instructing him. I did not have my hand over his only so to say that I could guide him."

On cross-examination he further testified:

"I had my hands on his hands,—not on his hands, but right behind his, the way that I stood behind him. He must have made a wrong move in some way which let that down."

We think that on the whole evidence it was the duty of the learned trial judge to submit the issue of the negligence of the defendant to the jury, upon proper instructions. The learned counsel for the appellant has strenuously argued that the evidence, at most, only justified a finding of negligence on the part of a fellow servant of the plaintiff, for which appellant could not be held liable. We do not think that this contention can be maintained. It is well settled that the immunity of the master from the consequences of the negligence of a fellow servant only applies when the master has, in the first instance, performed all

his duty to his servants.    One, and a very material, duty of the master
is to employ skillful and competent fellow servants.     It cannot be con-
tended that the stableman, Coyle, was a skillful and competent engineer,
for it plainly appeared that the accident which caused plaintiff's inju-
ries was due to his ignorance of the proper manner of working the en-
gine.    It certainly cannot be claimed that among the risks of plaintiff's
employment was a liability to injury arising in the course of instructing
a stableman how to run an engine.  , It is to be borne in mind that the
evidence shows that the appellant himself directed his engineer to
"break in" Coyle, so that he could run the engine.

The learned counsel for the appellant further contends that the act of
the engineer in attempting to teach Coyle how to operate the engine at
the time that he did was an independent act on his part, and that, if
the engineer was negligent in selecting an improper time to instruct
Coyle, it was the negligent act of the engineer, for the consequences of
which defendant cannot be held responsible.    Conceding, for the sake
of the argument, that this contention is a correct one, a complete an-
swer to it is that the jury have found the fact to be otherwise.    In the
course of his charge, the learned trial judge instructed the jury as
follows:

"In order to find that Mr. Davids was negligent, you must decide that the engi-
neer was careless in what he did, and that the engineer was, at the time, acting
for Mr. Davids; because, if the engineer was acting on his own account, Davids
would not be responsible for his acts.  * * *  If he [the engineer] was not
acting for the master, or under his direction, then Davids, the master, would not
be responsible for the act of the engineer."

Under these instructions the jury found for the plaintiff.

Certain exceptions were taken by the learned counsel for the defend-
ant to the refusal of the learned trial judge to charge as requested, but
none of them seem to us to call for any special attention.    The law ap-
plicable to the case, as laid down by the learned trial judge to the
jury, covered the whole case, and was quite as liberal, we think, to the
appellant as the case would warrant.    We are of the opinion that the
judgment and the order denying motion for a new trial should be
affirmed, with costs.